|  | |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF PUERTO RICO | |
| FRANK A. QUIÑONES,<br><br>    Claimant,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Respondent. | Civil No. 07-2198 (JAF) |

**OPINION AND ORDER**

Claimant, Frank A. Quiñones, petitions this court under 42 U.S.C. § 405(g) to review the decision of Respondent, Commissioner of Social Security ("Commissioner"), ceasing the payment of disability benefits to Claimant. (Docket No. 1.) Commissioner opposes the petition (Docket No. 19), and Claimant replies (Docket No. 25).

**I.**

**Factual and Procedural Synopsis**

We derive the following facts from the parties' filings (Docket Nos. 1; 13; 19; 25) and the record in this case ("R.") (Docket No. 12). Claimant, a vocational school graduate, was born on June 5, 1970. (R. at 67, 129.) He worked as a mechanic, an assembler in a computer manufacturing plant, and a department store employee before stopping work on July 14, 1995, because of a disability. (R. at 71, 94.) Claimant received disability insurance benefits ("DIB") beginning November 13, 1998. (R. at 534.)

Civil No. 07-2198 (JAF)                                                        -2-

On December 17, 2003, Commissioner determined that Claimant's impairments had medically improved as of December 2003 and Claimant was therefore no longer disabled. (R. at 560-64.) Accordingly, Commissioner terminated Claimant's DIB as of February 1, 2004. (R. at 555.) On February 12, 2004, Claimant requested reconsideration of the termination (R. at 567), which Commissioner denied on July 6, 2004 (R. at 569-79).

On July 22, 2004, Claimant requested an administrative hearing before an administrative law judge ("ALJ") (R. at 582), which took place on March 1, 2006 (the "ALJ hearing") (R. at 774-802). Claimant attended the ALJ hearing with counsel, and testified on his alleged disability. (R. at 776-82.) Claimant stated that he continued to take medications for back pain (R. at 777-78); suffered injuries from a recent car accident, a prior car accident in 1996, and a corrective operation on his nose (R. at 778); experienced pain in both hands due to carpal tunnel syndrome, which was unrelated to his prior accident (R. at 779); had physically improved since the termination of DIB and did not depend on the cane for movement as much as he had before (R. at 779); and felt emotionally sluggish but he had discontinued his psychiatric treatment. (R. at 780).

The ALJ then examined Dr. Winston Ortiz, a medical expert. (R. at 782-98.) Ortiz had previously examined Claimant on June 6, 1996, in the course of treating Claimant's injuries from his first car

Civil No. 07-2198 (JAF)                                                           -3-

accident in 1995 that provided the basis for Claimant's receipt of DIB. (R. at 786-87.)

Having reviewed the medical evidence in Claimant's case, Ortiz compared Claimant's condition in October 1997 with his subsequent condition in October 2003 by citing the following evidence. (R. at 783-97.) On October 1, 1997, Dr. Reynaldo Carreras diagnosed Claimant with radiculopathy due to a herniated disc and a neurogenic bladder. (R. at 455-60.) A subsequent evaluation by Carreras dated August 6, 2003, mentioned a herniated disc, but did not mention radiculopathy. (R. at 711-17.) Ortiz said, "Radiculopathy is an irritation of the root of the nerve due to a particular condition," such as a herniated vertebral disc. (R. at 796.) Claimant underwent surgery to correct his urinary problem. (R. at 783.) Claimant's psychiatric evaluation was the same in 2003 as in 1997. (R. at 703-05.) Claimant complained of pain in the right shoulder and right knee (R. at 711-12), but x-ray images showed no injuries in either joint (R. at 740-43). Carreras's latter evaluation in August 2003, as compared with the earlier from October 1997 (R. at 455-60), revealed that Claimant no longer suffered disability in the right leg and foot and exhibited no atrophy in circulation in his lower right limb (R. at 711-17). Claimant's limitation of movement was the same in both reports, but Carreras did not diagnose Claimant with continuing radiculopathy in his latter examination, even though some test results could support such a diagnosis. (R. at 706-17.) In view of these facts, Ortiz

opined that a person with Claimant's conditions would have a residual functional capacity ("RFC") for light work, infrequently lifting up to twenty pounds of weight. (R. at 786.)

Claimant's counsel then examined Ortiz with respect to evidence of radiculopathy in Claimant. (R. at 786-97.) According to Ortiz, although an electromyography test by Dr. Moraima Vélez suggested that Claimant still suffered from radiculopathy in August 2005, Vélez's report did not diagnose Claimant with radiculopathy (R. at 749-52), and Carreras's second neurological exam in 2003 precluded a diagnosis of radiculopathy. (R. at 791-92.) Ortiz stated that Carreras's latter examination did not diagnose Claimant with vertebral disability despite Claimant's allegation of pain, even though Claimant experienced limitations in bending. (R. at 793-94.) Upon further questioning, Ortiz testified that radiculopathy could recur due to slippages of vertebral discs, but a more recent diagnosis would be necessary to prove its existence. (R. at 797.)

The ALJ then examined Miguel Vellisiego, a vocational expert. (R. at 798-802.) Stating that he had examined the medical evidence, Vellisiego opined that "a hypothetical person with the same vocational characteristics as the claimant, the same age, and education," and the same physical and mental RFC's, could not perform Claimant's previous work, which required heavy or moderate activity. (R. at 799.) Furthermore, Vellisiego testified that Claimant could not return to his only previous job that required light work, because

that position required Claimant to sit for the entire time. (R. at 799.) Nevertheless, Vellisiego opined that Claimant could be employed as an examiner of products in an electronics factory, or as a hand labeler, and both jobs existed in substantial numbers in Puerto Rico. (R. at 800.) Upon further examination by Claimant's counsel, however, Vellisiego stated that, if Claimant's more recent allegations of total disability were true, Claimant would be unable to perform any job in the national economy. (R. at 801.)

On April 19, 2006, the ALJ rendered a decision finding that Claimant had not been disabled since November 1, 2003. (R. at 24-34.) Proceeding with his analysis under 20 C.F.R. § 404.1594(f), the ALJ cited Claimant's testimony at the ALJ hearing asserting that he had suffered injuries from three motor vehicle accidents. (R. at 26.) The ALJ observed that Claimant had attested to his improved physical condition and his reduced reliance on crutches to walk. (R. at 26.) The ALJ also noted that, despite Claimant's claims of continuing pain and mental depression, Claimant said that he had ceased psychiatric treatment. (R. at 26.) In view of Claimant's allegations regarding pain, high blood pressure, and depression, the ALJ found Claimant to suffer from a severe impairment, but not so severe as to qualify as one of the listed impairments under the regulations. (R. at 26-27.)

The ALJ determined that, based upon comparative medical evidence from the record, Claimant's medical condition had improved in the time between the previous determination of his disability on October

19, 1998, and the more recent date of November 1, 2003. (R. at 27-30.) The ALJ considered an examination dated September 5, 2003, by Dr. Juan Velasco, Claimant's treating physician (R. at 733-35); an x-ray examination dated March 25, 2003 (R. at 696); electromyograph and nerve conduction studies performed by Vélez on August 30, 2005 (R. at 749-52); the lack of medical prescription for intense pain; cardiovascular examinations conducted in August 2003 (R. at 718-32); a neurological examination by Carreras dated August 6, 2003 (R. at 711-17); testimony by Ortiz, the medical expert, at the ALJ hearing (R. at 782-98); the cessation of psychiatric treatment (R. at 780); and a psychiatric evaluation by Dr. Hector Rodríguez dated May 3, 2003 (R. at 703-05). (R. at 27-29.) The ALJ also credited Claimant's prior testimony at a hearing to assess Claimant's disability on March 30, 2004 (R. at 572-73), in which Claimant asserted that he enjoyed nearly normal levels of activity in daily living. (R. at 29.) Claimant said that he prepared breakfast for his children; took his children to, and picked them up from, school; performed household chores when his wife was pregnant; removed refuse; maintained the yard; and drove his car to that hearing. (R. at 29, 572-73.) In view of medical evidence on Claimant's physical and mental condition in 2003, the ALJ determined that Claimant had medically improved to the point where he could engage in substantial work. (R. at 29.)

The ALJ then assessed Claimant's RFC in view of the medical evidence and Claimant's allegations of symptoms. (R. at 30.) The ALJ

determined that, although medical records indicated that Claimant had lumbar spine degenerative disease and mental depressive disorder, these conditions were under control by medical treatment such that Claimant needed neither emergency treatment nor hospitalization nor any other special treatment (R. at 706-10). (R. at 30.) The ALJ concluded that the medical evidence did not support Claimant's assertions relating to the intensity and persistence of his ailments and the limitations to his daily activities. (R. at 30.)

The ALJ assessed Claimant's RFC in relation to his ability to perform his previous employment and other employment existing in significant numbers in the national economy. (R. at 30.) The ALJ cited evidence that Claimant suffered from conditions that can cause "pain and discomfort, but not of such disabling frequency and intensity as to prevent him from lifting and carrying a maximum of 20 pounds and 10 pounds frequently, affording the opportunity to alternate positions, and from otherwise functioning normally in non complex work activities." (R. at 30, 711-16.) The ALJ credited evidence that Claimant had responded to prescribed treatment without suffering adverse side effects and was not receiving special treatment for his conditions. (R. at 30, 706-10.) Furthermore, the ALJ considered Claimant's assertions that he related well with friends and neighbors, could drive his car, and took care of personal needs. (R. at 30, 572-73.) In view of the medical record, including

Civil No. 07-2198 (JAF)                                         -8-

Claimant's subjective complaints of pain, the ALJ concluded that Claimant retained the RFC to engage in light work. (R. at 31.)

The ALJ concluded that, because Claimant's previous work as mechanic and assembler either required semiskilled performance, medium exertion, or prolonged standing and walking, Claimant could not return to these positions. (R. at 31.) The ALJ noted that it may be insufficient to consult the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. pt. 404, subpt. P, App. 2, when additional limitations impeded a claimant's ability to perform the full range of light work. (R. at 31-32.) Consulting the testimony of Vellisiego, the vocational expert, the ALJ concluded that Claimant could find work in significant numbers in Puerto Rico as either a final examiner of manufactures or a hand labeler. (R. at 32.) The ALJ adopted Vellisiego's assessment because "[t]hese jobs are light, afford the opportunity to alternate postural positions, and do not require the performance of complex tasks," and hence within Claimant's RFC. (R. at 32.) The ALJ determined that Claimant's period of disability ceased on November 1, 2003, thereby terminating Claimant's eligibility to receive DIB. (R. at 32, 34.)

Besides evidence cited by the ALJ in his decision, the record includes a report by Dr. Andrew Przybyla dated December 13, 2003, which indicated no improvement in Claimant's symptoms of pain in the right knee and lower back pain, but omitted any reference to the date used for the comparison. (R. at 745.) Furthermore, Dr. Luis Camacho

certified on October 4, 2005, that Claimant suffered from radiculopathy, carpal tunnel syndrome, and arterial hypertension was receiving medication for these conditions. (R. at 754.)

On June 22, 2006, Claimant sought review of the ALJ's decision by the Appeals Council (R. at 16), which declined review on October 12, 2007 (R. at 9-15). On December 18, 2007, Claimant filed the present petition in this court seeking review of the ALJ's decision. (Docket No. 1.) Commissioner filed a memorandum of law on February 11, 2009 (Docket No. 19); Claimant filed a memorandum of law on March 6, 2009 (Docket No. 25).

## II.

### **Standard of Review**

An individual is disabled under the Social Security Act ("the Act") if he is unable to do his prior work or, "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted)

(quoting Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). In reviewing a denial of benefits, the ALJ must consider all evidence in the record. 20 C.F.R. § 404.1520(a)(3). Credibility and "[c]onflicts in the evidence are . . . for the [ALJ] - rather than the courts - to resolve." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). We reverse the ALJ only if we find that he derived his decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## III.

## Analysis

Alleging that the ALJ's decision was not based on substantial evidence, Claimant argues that (1) the record should have led the ALJ to conclude that Claimant suffered from a severe impairment; (2) the ALJ ignored evidence of Claimant's injuries from his most recent traffic accident preceding the ALJ hearing; (3) the ALJ failed to make formal findings regarding Claimant's mental impairments; (4) the ALJ failed to properly evaluate Claimant's subjective complaints, especially with respect to his mental condition; (5) the ALJ ignored

Ortiz's testimony suggesting Claimant could not work if his alleged symptoms were true. (Docket No. 25.) We first address these arguments and then consider the balance of medical evidence in this case.

**A.  Severe Impairment**

Contrary to Claimant's assertion (id.), the ALJ in fact determined that Claimant's complaints of lower back pain, right shoulder pain, high blood pressure, and mental depression amounted to severe impairments under the relevant regulations (R. at 26, 33).

**B.  Traffic Accidents**

Notwithstanding Claimant's contention (Docket No. 25), the ALJ explicitly considered Claimant's allegation that he had recently suffered injuries from a motor vehicle accident (R. at 26). Furthermore, the record is devoid of medical evidence pertaining to Claimant's treatment for injuries arising from this latest incident.

**C.  Mental Impairments**

Despite Claimant's claim to the contrary (Docket No. 25), the ALJ expressly considered Claimant's mental condition to assess the level of Claimant's mental impairment (R. at 28-29).[1]

**D.  Subjective Complaints**

Claimant accuses the ALJ of improperly evaluating Claimant's subjective complaints, especially those relating to his mental

---

[1] In ignoring the ALJ's express reasoning, Claimant's counsel is, at best, reckless to the truth. We warn counsel to observe his professional duty of candor to this tribunal. L.Cv.R. 83.5(a); Model Rules of Prof'l Conduct R. 3.3.

condition. (Docket No. 25.) The ALJ may weigh the credibility of a claimant's assertions regarding his impairments by noting all inconsistencies in the record between the claimant's assertions and medical findings. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987); S.S.R. 96-7p (Cum. Ed. 1996).

At the ALJ hearing, Claimant testified that he experienced disabling pain and suffered from severe mental depression. (R. at 779-80.) The ALJ noted in his subsequent decision that Carreras had found no muscle spasms or tenderness in the spine, except near the right shoulder, and had found some painful reaction to palpation in the lumbar region. (R. at 27, 711-16.) The ALJ considered the fact that Claimant's health conditions had "been controlled with conservative treatment with no need of Emergency Room treatment, hospitalization or any special medical procedure." (R. at 30, 706-10.) The ALJ also referenced Claimant's admission on March 30, 2004, that he could engage in numerous activities that required substantial movement, such as performing household chores and driving his children to school. (R. at 29, 572-73.) Thus, there is substantial evidence in the record against which the ALJ could properly weigh the credibility of Claimant's assertions of crippling pain.

With respect to Claimant's allegations of his mental health, the ALJ cited Rodríguez' psychiatric evaluation of Claimant on May 3, 2003, which revealed good contact with reality, no bizarre behavior or suicidal tendencies, logical thoughts, and orientation in all

three spheres as to time, place, and person. (R. at 28, 703-05.) Rodríguez found Claimant to be "capable of taking care of his personal needs and . . . [handling] his funds." (R. at 28, 705.) The ALJ further noted that Claimant no longer sought psychiatric or psychological treatment. (R. at 28, 780-81.) Accordingly, the ALJ properly considered the incongruence between Claimant's medical evidence and his subjective assertions of symptoms to discount the latter in assessing Claimant's RFC. See S.S.R. 96-7p.

**E.   Vellisiego's Testimony**

Claimant challenges the ALJ's refusal to credit the last response offered by Vellisiego during his testimony at the ALJ hearing. (Docket No. 25.) Addressing an inquiry by Claimant's counsel premised upon the veracity of Claimant's subjective allegations of his symptoms, the vocational expert opined that Claimant would be unable to perform any work in the national economy (R. at 801). In view of our conclusion that the ALJ properly weighed the credibility of Claimant's allegations, we similarly reject this last contention.

**F.   Other Evidence**

Having disposed of Claimant's arguments, we next review whether the record as a whole substantially supports the ALJ's reasoning (R. at 24-34). Our independent search reveals two items that potentially run counter to the general thrust of the medical evidence.

The first is a report by Przybyla dated December 13, 2003. (R. at 745.) In his case analysis of Claimant's medical records, Przybyla

noted that there was no improvement as to several of Claimant's symptoms, namely, pain in the right knee with antalgic gait and lower back pain. (R. at 745.) Przybyla also noted, however, that Claimant has a "[l]imping gait aided by crutches deemed not essential," and that Claimant had "moderate difficulty walking without aid." (R. at 745.) The import of Przybyla's report is further diminished by the fact that it does not indicate the referential point in time for the comparison. Moreover, a subsequent case report by Dr. José Pesquera dated March 9, 2004, observed that there was no new evidence following the cessation of Claimant's disability in December 2003 to warrant a revised assessment of Claimant's RFC. (R. at 746.)

However, we have also found a cursory note by Camacho dated October 4, 2005, in which Camacho certified that Claimant "ails from Radiculopathy, Carpal Tunnel Syndrome and Arterial Hypertension." (R. at 753-54.) Camacho said, "[Claimant] is undergoing treatment for his conditions and takes [medication]."[2] (R. at 753-54.)

In view of Ortiz' testimony that radiculopathy could recur, and that Vélez' report could confirm a diagnosis of radiculopathy (R. at 796-97), we find it puzzling that the ALJ did not expressly treat this latest medical record from 2005 in his decision. We accord significant weight to the medical opinion of a claimant's treating

---

[2] It is perplexing that Claimant had submitted Camacho's note at the ALJ's hearing but then failed to cite this evidence in his memorandum. (See Docket No. 25.) We remind Claimant's counsel of his professional duty of diligence. Model Rules of Prof'l Conduct R. 1.3.

Civil No. 07-2198 (JAF)                                                    -15-

physician. See Berrios-López v. Sec'y of Health & Human Servs., 951 F.2d 427, 431-32 (1st Cir. 1991). It is, therefore, incongruous for the ALJ to rely almost entirely on medical evidence that was over two years old when he had ready access to a more recent assessment by Camacho, Claimant's treating physician. While the ALJ's disability determination prior to this evidence appears to be grounded in substantial evidence, we find his determination for the period between Vélez' examination on August 30, 2005, and the ALJ's decision to lack sufficient medical support.

Therefore, we find that the ALJ's disability determination for the period from August 30, 2005, through April 19, 2006, lacks basis in substantial evidence. See 42 U.S.C. § 405(g). Where the ALJ's decision is undermined by infirmities in evidentiary support, the usual remedy is to remand for further consideration of relevant medical records. See Seavey v. Barnhart, 276 F.3d 1, 12-13 (1st Cir. 2001) (noting that two avenues for remand exist under the fourth and sixth sentences of 42 U.S.C. § 405(g)).

## III.

## Conclusion

In view of the foregoing, we hereby **AFFIRM IN PART** and **REVERSE IN PART** Commissioner's determination. We **GRANT** Claimant's petition (Docket No. 1) and **REMAND** the case to Commissioner pursuant to

Civil No. 07-2198 (JAF)                                                        -16-

sentence four of 42 U.S.C. § 405(g), but only with respect to Claimant's condition subsequent to August 29, 2005.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 22nd day of September, 2009.

                                                s/José Antonio Fusté
                                                JOSE ANTONIO FUSTE
                                                Chief U.S. District Judge